# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## The Ocean Accident and Guarantee Corporation, Ltd., of London, England, v. Washington Brick and Terra Cotta Company.

### September 29, 1927.

1. Appeal and Error—*Weight of Verdict Set Aside by Trial Judge.*—A verdict which has met with the disapproval of the trial court is not entitled to the same weight on appeal as is one sanctioned by that court; that is, in passing on the question on appeal, the evidence upon which the verdict is founded is not to be viewed altogether as on a demurrer to the evidence. Yet it must appear that the verdict was contrary to the evidence, or without evidence to support it.

2. Child Labor Law—*Indemnity Insurance—Restriction of Liability—Employment in Violation of Statute Negligence.*—Since the enactment of the legislation known as Child Labor Laws forbidding and regulating the employment of minors of certain ages, and making their employment unlawful, the indemnity insurance companies have quite generally restricted their liability to employees lawfully employed. The reason for this is apparent. It is universally held that the employment in violation of the statute is in itself negligence and the proximate cause of the injury independent of the circumstances under which the injury occurred.

3. Child Labor Law—*Employment in Violation of Child Labor Law — Right of Action where Child Injured or Killed During Illegal Employment.*—The unlawful employment of a minor in violation of the provisions of the Child Labor Law (Acts 1918, page 347) is illegal, and if the child is injured or killed during the illegal employment a right of action follows.

4. Child Labor Law—*Indemnity Insurance—Liability of Indemnity Company where Child was Illegally Employed.*—An indemnity insurance company insuring a master against loss imposed upon it by law for damages on account of injuries to or death of such employees as were legally employed is not liable for the death of an employee where the employment was unlawful because contrary to the Virginia Child Labor Law (Acts 1918, page 347).

5. Child Labor Law—*Indemnity Insurance—Liability of Insurance Company—Insurance Company Decline to Defend Where Employment was Illegal—Case at Bar.*—The instant case was an action by an employer on an indemnity policy to recover from the insurer the amount of a judgment recovered against the employer by an employee. An analysis of the declaration in the action by the employee against the employer disclosed that it was solely an action based upon the violation of the Virginia Child Labor Law (Acts 1918, page 347). The verdict of the jury and the judgment of the court, therefore, against the employer must be taken as one recovered upon a ground for which under its contract the insurer was not liable. Under the circumstances, therefore, of the instant case the insurer had a right to decline to defend or participate in the defense of the case against the employer; otherwise it might have made itself subject to the subsequent claim that by so doing it had waived its right under the policy to claim non-liability.

6. Indemnity Insurance—*Duty of Insurance Company to Defend Actions—Suit Upon a Cause of Action for which Insurance Company was not Liable—Case at Bar.*—The instant case was an action by an employer upon an indemnity policy to recover from the insurer the amount of a judgment obtained by an employee against the employer. It was contended that the insurer was bound by the terms of its policy to defend all suits and actions instituted against the employer by an employee. The policy bound the insurer to defend all suits, although "such suits, or other proceedings, allegations, or demands are wholly groundless, false or fraudulent."

   *Held:* That this provision was not intended to bind the insurer to take charge of and defend a suit in which, under the terms of the policy, it had no interest.

7. Indemnity Insurance—*Defense by Insurer—Waiver of Non-Liability by Defense.*—It is generally held that an insurer in an indemnity policy by undertaking to defend a suit by an employee against the employer waives its claim of non-liability under the policy. If the insurer does defend and a judgment results against the employer, the insurer is bound to pay the judgment.

8. Indemnity Insurance—*Construction of Policy—Provision Requiring Insurer to Defend Suits—Employee Illegally Employed.*—The language of an indemnity policy which requires the insurer to defend suits which may at any time be instituted against the employer "on account of such injuries, including suits or other proceedings, alleging such injuries and demanding damages or compensation therefor," must be read in connection with the fundamental contractual obligation appearing upon the face of the contract between the parties, that the insurer would indemnify the employer only in case of recovery of damages by employees legally employed.

9. INSURANCE—*Construction of Policies—Construed Against Insurer—New Contract for the Parties.*—It is a well recognized rule that insurance policies, in case of doubt, should be construed most strongly against the insurer. But this does not authorize the court to make a new contract for the parties, nor to adopt a construction not justified by the language or intent of the parties.

10. INDEMNITY INSURANCE—*Defense of Suits—Suit where Company would not be Liable if Plaintiff Recovered.*—An insurer in an indemnity policy is under no obligation to defend a case against the insured when it would not be liable under its contract for any recovery therein had. On the contrary, it should refrain from interfering in any way with the insured in respect to its defense of the case.

11. EMPLOYER'S LIABILITY INSURANCE—*Child Labor Law—Liability of Indemnity Company where Child Illegally Employed—Father of Child Falsely Representing Age of Child—Case at Bar.*—The instant case was an action by an employer against an indemnity company to recover a judgment obtained by an employee against the employer. The indemnity policy only covered cases of lawful employment and it was admitted that the employment was in violation of the Child Labor Law. But the employer insisted that the action in which the judgment was recovered was by the father of the child as administrator and that the father had falsely represented that the child was over sixteen years of age.

    *Held:* That this possible defense on the part of the employer did not alter the character of the action which was upon a ground not covered by the insurance contract.

12. CHILD LABOR LAW—*Action Against Master for Injuries or Death of Child—Misrepresentation of Age of Child.*—As a general rule, a misrepresentation of the age of the minor cannot be set up in an action under the Child Labor Law in bar of a recovery for death or injury of the child during the employment.

13. INDEMNITY INSURANCE—*Employment in Violation of the Child Labor Law—Misrepresentation as to Age of Minor—Case at Bar.*—In the instant case, an action by an employer against an indemnity company, the policy restricted the liability of the company to employees lawfully employed. The employment in the instant case was illegal, being in violation of the Child Labor Law. There was evidence that the father of the child had procured his employment and had stated that he was over fifteen years of age.

    *Held:* That this did not alter the. rights of the insurer and insured under their contract.

14. INDEMNITY INSURANCE—*Defense of Action by Indemnity Company—Withdrawal from Action by the Company and Judgment by Default Against Employer—Sufficiency of Notice of Withdrawal—Case at Bar.*—The instant case was an action by an employer upon an indemnity

policy to recover the amount of a judgment obtained by an employee against the employer. The employment was illegal, being in violation of the Child Labor Law, but the employer contended that inasmuch as the insurer appeared in defense of the action and subsequently withdrew without giving the employer due and proper notice of its withdrawal, which resulted in a default judgment against the employer, the insurer was liable for negligence in that respect. The claim agent of the insurer directed local counsel to enter an appearance in the suit in February. Upon inspection of the declaration it was ascertained that the suit was brought upon the ground that the employee was under sixteen years of age. On April 11th attorney for the insurance company addressed a letter to the employer notifying it that the death of the boy did not come within the terms of the policy, and hence the insurer was under no obligation to defend the suit and its counsel had withdrawn. On April 25th, no one appearing for the defendant, a default judgment was entered for $5,000.00. There was much evidence of correspondence and conversations between the agents of the insurer and the employer in regard to this withdrawal from the case by the insurer. All available testimony was heard by the jury.

*Held:* That the verdict of the jury in favor of the insurer was conclusive of the fact that the notice given to the employer was adequate to enable it to protect its interests.

Error to a judgment of the Circuit Court of the city of Alexandria, in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*H. Noel Garner, Caton & Caton,* and *Jas. H. Price,* for the plaintiff in error.

*Gardner L. Boothe,* and *Fischer & Fischer,* for the defendant in error.

CRUMP, P., delivered the opinion of the court.

In this opinion the plaintiff in error, which was the

defendant on the trial below, will be designated as the insurer, or insuring company, or defendant, and the defendant in error, a Virginia corporation, as the brick company, or the plaintiff.

In an action instituted by notice of motion for judgment by the brick company against the insuring company, there was a verdict for the defendant insurer, which was on March 1, 1926, set aside on motion of the brick company as plaintiff, and the court entered judgment for the plaintiff for $4,200.45, the amount sued for. The insuring company excepted to this ruling and judgment of the court and the case is here on a writ of error.

The petition for the writ of error contains numerous assignments of error, challenging rulings of the court in overruling a demurrer to the notice, in passing upon various questions during the trial, and in refusing to give instructions asked for. In our view of the case the main assignment is that taking exception to the action of the court setting aside the verdict in favor of the insurer and entering judgment for the plaintiff. If the trial court erred in that respect, and judgment should be entered for the defendant on the verdict, then it is not necessary, for the disposal of the case in this court, to consider other assignments of error.

[1] The verdict, having met with the disapproval of the trial court, is not entitled to the same weight on appeal as is one sanctioned by that court; that is, in passing on the question here, the evidence upon which the verdict is founded is not to be viewed altogether as on a demurrer to the evidence. Yet it must appear that the verdict was contrary to the evidence, or without evidence to support it. These rules in their general statement and methods of application are familiar.

The case of the plaintiff is set out in the notice of

27

motion in the form and manner of a declaration in assumpsit containing two counts. It is alleged that the defendant had issued to the brick company its indemnity policy, agreeing to indemnify it as an employer against loss imposed upon it by law for damages on account of injuries to, or death of, such of its employees as were legally employed, and further to defend any suits or other proceedings instituted against the brick company at any time, including suits or other proceedings alleging such injuries and demanding damages therefor, although such suits, proceedings, allegations, or demands are wholly groundless, false, or fraudulent, and to pay all costs incurred in investigation and defense; that while the policy was in force, on May 7, 1923, James Lyon, one of the employees, was injured and died, and a report of the accident and death was duly made to the agent of the insurer; that in December, 1923, Hugh Lyon, administrator of James Lyon, brought suit in Arlington county against the brick company for $10,000.00 damages, and the summons served in that case was promptly delivered to the agent of the insuring company in Washington, D. C.; that on the 18th day of February, 1924, at the instance of the insuring company, its attorney entered appearance in the case preparing to defend it; that the attorney for the insuring company at the following April term of the court withdrew his appearance as counsel without having first notified the brick company, and left the brick company without any representative, and without being properly advised of the situation, whereupon Hugh Lyon, administrator, took judgment by default in the sum of $5,000.00; that when the brick company employed counsel to protect their interests it was found upon investigation that the term of court at which the judgment was rendered had expired, so

that no motion for a new trial could be made and no appeal be taken; that an injunction against the enforcement of the judgment was obtained and the brick company then succeeded in compromising the claim for $3,500.00, which having been paid, demand was made upon the insurer for that amount and an attorney's fee and expenses, totalling $4,200.45, which the insurer refused to pay.

In its grounds of defense the insurer alleges (1) that James Lyon, the employee killed during his employment, was illegally employed, being only fourteen years of age, and the policy did not cover an accident to him nor his death, and the insurer had not undertaken to defend a suit brought by reason of his death; (2) that the brick company had suffered the judgment by default to be rendered against it on the 25th day of April, 1924, although it had been advised on April 16th that the insurer was not liable on the claim made and did not undertake the defense of the suit; (3) that the injunction suit, but for the voluntary settlement of the claim by the brick company, might have been pursued to a successful conclusion; (4) that the brick company had on the 29th of January, 1925, voluntarily settled and paid the judgment against it, as shown by the record of the case in the clerk's office, and the insurer had nothing to do with the settlement and compromise and was not advised of it.

The parties having thus stated their respective positions, the issues so arising were submitted to a jury for determination. The evidence adduced by the one side or the other covered all the documents referred to, oral testimony for both sides, including full testimony by counsel for the brick company and for the insurer, and correspondence between the parties or their agents and attorneys. The jury, therefore,

had before them the record in the case of James Lyon's administrator against the brick company, showing the judgment for $5,000.00 rendered April 25, 1924, and subsequently marked satisfied; the policy of indemnity insurance upon which the brick company relied for recovery; the record of the injunction suit referred to; and also a report made by the brick company to the Industrial Commission of Virginia as to the accident and the death of the employee; as well as numerous letters between the parties written both before and after the judgment rendered on April 25, 1924. The court was extremely liberal in the admission of evidence, and every fact having any bearing upon the transaction seems to have been laid before the jury.

The learned counsel for the brick company in his brief bases the right of recovery upon two theories of the case, because the motion for judgment "set forth a good cause of action, *first*, of liability on the insurance company under its policy to defend the Lyon's suit, even though it might not have been liable to pay the judgment if rendered therein against the brick company, should it have been *proven on the trial of the case* that the deceased was under the age of sixteen years; and *secondly*, because the insurance company having caused its counsel to enter an appearance of the brick company allowed them to withdraw their appearance *without proper and due notice to the brick company*, and by so doing allowed a large judgment to be rendered by default without the knowledge of the brick company when it had a good and valid defense, and one that would certainly have greatly reduced the amount of the verdict."

Under the law and the evidence was the right of recovery upon one or both of these claims so definitely and clearly established as to render unwarranted any other verdict than one for the plaintiff?

The policy of indemnity insurance embraces two subjects, in that the insurer agrees to protect the brick company in the matter of all compensation allowances under the Workmen's Compensation Law (Laws 1918, chapter 400) on account of injury to or death of its employees, and also to indemnify the brick company as employer against loss by reason of damages claimed against it in the event of injury to or death of certain of its employees. With the first mentioned insurance contract we are not concerned here. Clause one of the policy embraces both insurance agreements, the first mentioned under (a), the second under (b). Item (b) is as follows:

"One (b). To indemnify this employer against loss by reason of the liability imposed upon him by law for damages on account of such injuries to such of said employees as are legally employed wherever such injuries may be sustained within the territorial limits of the United States of America or the Dominion of Canada. In the event of the bankruptcy or insolvency of this employer the company shall not be relieved from the payment of such indemnity hereunder as would have been payable but for such bankruptcy or insolvency. If, because of such bankruptcy or insolvency, an execution against this employer is returned unsatisfied in an action brought by the injured, or by another person claiming by, through or under the injured, then an action may be maintained by the injured, or by such other person claiming by, through or under the injured, against the company under the terms of this policy for the amount of the judgment in said action not exceeding the amount of this policy."

The next succeeding three clauses are:

"Two. To serve this employer (a) by the inspection of work places covered by the policy when and as

deemed desirable by the company and thereupon to suggest to this employer such changes or improvements as may operate to reduce the number or severity of injuries during work, and, (b) upon notice of such injuries by investigation thereof and by settlement of any resulting claims in accordance with law.

"Three. To defend, in the name and on behalf of this employer, any suits or other proceedings which may at any time be instituted against him on account of such injuries, including suits or other proceedings alleging such injuries and demanding damages or compensation therefor, although such suits, other proceedings, allegations or demands are wholly groundless, false or fraudulent.

"Four. To pay all costs taxed against this employer in any legal proceedings defended by the company, all interest accruing after entry of judgment and all expenses incurred by the company for investigation, negotiation or defense."

[2, 3] Since the enactment of the legislation known as child labor laws, forbidding and regulating the employment of minors of certain ages, and making their employment unlawful, the indemnity insurance companies have quite generally restricted their liability to employees lawfully employed, by the use of the terms appearing in this policy or other language having the same effect. The reason for this is apparent. It is universally held that the employment in violation of the statute is in itself negligence and the proximate cause of the injury independent of the circumstances under which the injury occurred. The Virginia Child Labor statute, applicable at the time of the transactions under review, is found in Acts of the General Assembly 1918, page 347. It is settled in Virginia that the unlawful employment of a minor in violation

of the provisions of this statute is illegal, and if he is injured or killed during the illegal employment a right of action follows. *Standard Red Cedar Chest Co. v. Monroe,* 125 Va. 442, 99 S. E., 589; *Miller Mfg. Co. v. Loving,* 125 Va. 255, 99 S. E. 591.

[4] It is clear that the insuring company was under no liability for the death of Lyon, the employee, if his employment was unlawful because contrary to the provisions of the Virginia statute. *Mason Henry Press v. Aetna L. Ins. Co.,* 211 N. Y. 489, 105 N. E. 826; *Kleeman Co. v. Casualty Co.,* 177 Mo. App. 397, 164 S. W. 167; *Buffalo Steel Co. v. Aetna L. Ins. Co. supra,* 136 N. Y. S. 977.

The case from 211 N. Y. was in many respects similar to the instant case. There the injured minor brought an action against the employer and a judgment was rendered upon a verdict based solely upon the fact that there was a violation of the statute. The language of the policy was, "this policy does not cover loss or expense arising on account of or resulting from injuries or death to, or if caused by any person employed in violation of law." In the course of the opinion the court says:

"The parties by their contract of indemnity or insurance had a right to place a limitation on the insurer's liability and to exempt the latter from any claim for indemnity to the insured against damages resulting from the latter's violation of the labor law. They did insert in the contract a clause thus limiting the liability of the insurer.

"The jury in the employee's action determined that the accident did result from such a violation of law by the insured and the judgment of which the latter now seeks payment from the respondent measures the damages caused solely by such violation. Under these

circumstances it is plain that the respondent should have the benefit of the limitation on its liability which has been duly accepted and agreed to, unless it has in some manner waived this limitation, or by its conduct has estopped itself from asserting the same. We cannot discover that it has done either.

"When the employee made his claim for damages against the insured basing such claim on various grounds which were covered by the policy of insurance, and also on the alleged violation of law which was not covered thereby, the insurer had a choice between two courses of action which would preserve the limitation on its liability which has been referred to. It could regard simply the charge of violation of law by the insured and refuse to defend the action, taking its chances that this sole ground of liability, if any, would be established, and for which it would not be liable. On the other hand, it could proceed with the defense of the action under an understanding with or notice to the insured, express or implied, that it would defend against all allegations of fault, and that if in the end it should come out that the only allegation sustained was the one of violation of law, its rights should be preserved and it should not be liable."

The court then proceeds to call attention to the fact that in the action for damages by the boy various grounds of negligence were alleged which were covered by the policy as well as allegations asserting a case caused by violation of the labor law. For this reason the court held that the insurer had a right, and also should participate in the defense, because, if recovery was had, founded upon a reason coming within the terms of the policy, the insurer would be bound.

This seems to be reasonable, and a like holding has been made in a recent Kentucky case, *Fidelity &*

*Casualty Co.* v. *Dry Goods Co.*, 208 Ky. 429, 271 S. W. 444, 43 A. L. R. 318. The court there also held that where there are two grounds of liability asserted by the injured employee, for one of which the insurer is liable and for the other is not liable, neither party has the right to exclude the other from participating in the defense, and the insurer should defend the action as far as a claim was therein made upon the ground upon which it was liable. The insuring company there gave notice to the employer that it was not liable if the boy had been employed in violation of the labor law, and then proceeded to join the employer in defending the action. Subsequently the employer offered to pay part of the judgment obtained by the injured employee if the insurer would pay the balance. The insurer declined to do this, upon the ground that it still had the right to try the question of liability, and it would be relieved of all liability if the injured boy had been illegally employed. Thereupon the employer brought suit against the insurer for the amount of the judgment obtained by the boy and a recovery was allowed in the trial court. This judgment was reversed, the court stating:

"The judgment in the *Miller Case* determined that the insured was liable to Miller, but did not determine on what ground it was liable. The record does not show on what ground the verdict of the jury was based and there can be no inquiry now into this question. The insurer is liable on the policy unless Miller was employed contrary to the statute. The burden of proof is upon the insurer to show that he was so employed, and to establish the same facts as were necessary in Miller's case to make out a right in him to recover upon this ground. The question to be submitted to the jury here is whether Miller at the time

was under sixteen years of age and was employed in an occupation dangerous or injurious to health, or morals, or to life or limb, without the certificate of the county physician or health officer, as the case may be."

The case was reversed in order that this question might be passed upon by the jury upon the second trial.

[5] A close examination and analysis of the declaration in the case of the administrator of Lyon against the brick company discloses unquestionably that it was solely an action based upon the violation of the Virginia Child Labor Law.

The answer of Lyon's administrator to the injunction bill of the brick company, doubtless written by the same attorney who prepared the declaration, states "defendant says that the execution enjoined by complainant in this cause was issued upon a judgment in an action brought under the provisions of the act of the General Assembly of Virginia commonly called the Child's Labor Law, approved March 27, 1922, etc."

As stated by the court in *Standard Red Cedar Chest Co.* v. *Monroe, supra,* such cases are brought under the provision of the Virginia Code allowing any person injured by the violation of a statute to recover from the offender damages, although a penalty or forfeiture for the violation be imposed. The verdict of the jury and the judgment of the court, therefore, against the brick company must be taken as one recovered upon a ground for which under its insurance contract the insurer was not liable. Otherwise, so far as the immediate question under consideration is concerned, it might be necessary to send this case back for a new trial, as was done in the Kentucky case. Under the circumstances of the instant case the insurer had a right to decline to defend or to participate in the defense of the case

against the brick company; otherwise it might make itself subject to the subsequent claim that by so doing it had waived its right under the policy to claim non-liability.

It appears from the evidence in this case that the decedent, young Lyon, was, at the time of his employment and of his death a few months afterward, only fourteen years of age, and therefore under sixteen years. By section 13 of the Virginia statute of 1922 (Laws 1922, chapter 489), before referred to, it is enacted that no child under sixteen years of age shall be employed, permitted, or suffered to work in certain characters of business, including among them a brick or lumber yard. It is manifest, therefore, that the boy was illegally employed, and, as the fundamental question in this case, the insurer was not liable for an injury to him or for his death under the express terms of the policy.

[6-8] It is contended, however, by counsel for the brick company, that the insurer was bound by the terms of its policy to defend all suits and actions, or other proceedings, instituted against the employer, basing the argument in this respect upon the third clause of the policy above transcribed. We cannot agree with the argument in this respect. It is true that the provisions of the policy alluded to may have the effect of binding the insurer to defend all suits, although "such suits, or other proceedings, allegations, or demands are wholly groundless, false or fraudulent," as stated in the policy. It is scarcely logical to hold that this provision concerning the right and obligations to defend the suit, which is often contained in the indemnity policies, would be intended to bind the insurer to take charge of and defend a suit in which, under the terms of the policy, it had no interest. If this is true, it

would result in compelling the insurer to waive its claim of nonliability, because it is quite generally held that if the insurer does defend and a judgment results against the employer, the insurer is bound to pay the judgment. The language of the policy which requires the insurer to defend suits which may at any time be institued against the employer "on account of such injuries, including suits or other proceedings alleging such injuries and demanding damages or compensation therefor," must be read in connection with the fundamental contractual obligation appearing upon the face of the contract between the parties, which was that the insurer would indemnify the employer only in case of recovery of damages by employees legally employed.

[9, 10] It is a well recognized rule that insurance policies, in case of doubt, should be construed most strongly against the insurer. But this does not authorize the court to make a new contract for the parties, nor to adopt a construction not justified by the language or intent of the parties. The argument in this regard does not seem to have occurred to counsel or to the court in the cases from New York and from Kentucky above referred to. In our opinion the only reasonable construction of the policy here is that the insurer was under no obligation to defend the case against the insured when it would not be liable under its contract for any recovery therein had. On the contrary, it should refrain from interfering in any way with the insured in respect to its defense of the case.

[11] It is further insisted on behalf of the brick company that the action by the administrator was one in which the administrator was the father of the boy and was himself interested in the recovery, therefore the brick company would be under no liability for

that action because the father had falsely represented at the time of the employment that the boy was over sixteen years of age. It is held in *Dusha* v. *V. & R. L. Co.*, 145 Minn. 171, 176 N. W. 482, 23 A. L. R. 632, that under such circumstances the parent of the deceased minor might be barred from recovery if there was a statute penalizing the parent for allowing the minor to engage in the unlawful employment. The Virginia statute of 1922 does make it a misdemeanor for a parent to allow a minor child to be so employed. This possible defense on the part of the brick company to the action for damages still does not alter the character of that action, which is upon a ground not covered by the insurance contract.

[12] As a general rule, a misrepresentation of the age of the minor cannot be set up in an action under the statute in bar of a recovery. *American Car & Foundry Co.* v. *Armentraut*, 214 Ill. 509, 73 N. E. 766; *Mason Henry Press* v. *Aetna Life Ins. Co.*, *supra*.

[13] There was evidence in the instant case before the jury that the father had procured the employment for young Lyon and had stated that he was over fifteen years of age.

In our opinion that fact did not alter the rights of the parties under the insurance contract in this case.

[14] Under all the circumstances appearing in evidence, we are of opinion that there was a sufficient showing to justify the jury in finding against the brick company upon the first ground assigned by the brick company as a good cause of action. As before set out, it is further contended by the brick company that inasmuch as the insuring company appeared in defense of the action and subsequently withdrew without giving the brick company proper and due notice of its withdrawal, which resulted in the default judgment,.

the insuring company is liable for its negligence in that respect. There was much evidence before the jury bearing upon that issue. It appears that when the summons in the action brought by the administrator was served upon the brick company, it was delivered to the agent of the company in Washington, both the insured and the insurer having offices in that city. Thereupon a competent lawyer residing in the city of Richmond, who was acting as claim agent and adviser of the insurer in Virginia, was notified and he directed local counsel to enter an appearance in the suit, which was done in Februray, 1924. The Richmond agent of the company was a member of the legislature, and for that reason the case went over until the April term of the trial court. When the court convened in April the local counsel for the insurer appeared and by leave of court withdrew his appearance for the defendant. This was done because in the meantime the declaration had been inspected and it was ascertained that the suit was brought upon the ground that the boy was under sixteen years of age. On the 11th of April the Richmond attorney addressed a letter to the brick company notifying it of the fact that the boy was under sixteen years of age and therefore his death did not come within the terms of the policy, and hence the company was under no obligation to defend the suit and its counsel had withdrawn from the case. This notification was not received by the Washington agent until April 16th. Upon the motion of the plaintiff in the action by his attorney, on April 25th, the court, no one appearing for the defendant, allowed the case to be tried and upon the evidence submitted by the plaintiff the jury brought in the verdict for $5,000.00 and judgment was entered at once. Testimony was submitted to the

effect that the brick company had no knowledge of the rendition of this judgment, and when it did engage an attorney to look after the case the term of the court had adjourned and therefore it was too late to take any action looking to a rehearing of the case.

It appears from the testimony that when the agent of the brick company at Washington received the notice on April 16th, he communicated with the agent of the insurer in that city and subsequent communications and correspondence took place. The insurer apparently adhered to its contention that it was not liable under its policy and therefore had no concern with the action against the brick company. All available testimony upon this branch of the case was heard by the jury, and their verdict is conclusive of the fact that the notice given to the brick company was adequate to enable it to protect its interests. Whether or not the nine days intervening between the 16th and the 25th of April was sufficient for the brick company to procure an attorney to look after its defense in the case, and whether the brick company was in any way negligent in the transaction, were questions submitted by the parties to the jury. It appears that when the agent of the brick company at Washington received the notification on April 16th he went around to the agent of the insurer and had a conversation which resulted in further communications and consideration of the situation. It is possible the jury might have thought that a well informed manager of any large manufacturing concern would have such knowledge of the child labor law as to understand that if the boy was under sixteen years of age he had been illegally employed; and therefore the brick company would have acted at once upon receiving the

notice from the insurer, instead of conferring with the agent in Washington.

Many letters between the parties were read to the jury and filed, and counsel for each of the parties testified at length before the jury. It was unfortunate that the action for damages was left undefended and the plaintiff thus obtained his judgment as a matter of course. Who was at fault and how the blame or negligence should be apportioned were matters for determination by the jury. In our opinion the evidence shows that both the insurer and the insured through their respective agents were acting in perfectly good faith with each other. Whether the insuring company, by its manner of withdrawing from the damage action after it had by its counsel appeared in defense of it, misled the insured so that the insured was caused by the conduct of the insuring company to neglect the defense of the action was passed upon by the jury. There were duties resting upon both parties, and they were under obligation to act fairly and diligently with respect to each other. The jury having found their verdict for the defendant, the evidence in the case does not so clearly establish the plaintiff's side as to show that the verdict of the jury was contrary to the evidence or without evidence to support it.

On the whole case it rather appears that there was lack of promptness and diligence on both sides.

The record shows that only two instruments were given by the trial court to the jury and these were requested by the plaintiff, the court refusing all instructions requested by the defendant.

The instant case presents a controversy involving rather unusual features. On the whole case we are of opinion there was sufficient evidence before the jury

to justify the jury in finding a verdict for the defendant. Therefore the judgment of the lower court will be reversed, the verdict reinstated and a judgment for the defendant insuring company will be rendered by the appellate court.

*Reversed.*