T. S. Ellis, III, United States District Judge
This diversity declaratory judgment action arises from a dispute over the cause of the tragic death of 23-month old Elijah Nealey while in the care of his babysitter, Jessica Anne Fraraccio ("Fraraccio"). Because the parties sharply disputed whether Fraraccio caused Elijah Nealey's death, a jury trial was held which resulted in the jury answering the following three questions:
(i) Has plaintiff proved by a preponderance of the evidence that the death of Elijah Nealey was not an accident?
(ii) Has plaintiff proved by a preponderance of the evidence that Jessica Fraraccio intentionally caused bodily injury to Elijah Nealey, and that Jessica Fraraccio knew or ought reasonably to have known that her actions would result in Elijah Nealey's death?
(iii) Has plaintiff proved by a preponderance of the evidence that Jessica Fraraccio physically abused Elijah Nealey, and that Elijah Nealey's death resulted directly or indirectly from this physical abuse?
The jury answered "yes" to each of these interrogatories. Following the jury verdict, judgment was entered in favor of plaintiff Nationwide Property & Casualty Insurance Company ("Nationwide"), and a declaratory judgment issued concluding that there was no coverage under Fraraccio's *451 insurance policy for the death of Elijah Nealey because (i) the death was not an "occurrence" within the meaning of the policy, (ii) coverage was barred by the policy's intentional acts exclusion, and (iii) coverage was barred by the policy's physical abuse exclusion. See Nationwide Prop. & Cas. Ins. Co. v. Fraraccio , 250 F.Supp.3d 5 (E.D. Va. 2017) (Declaratory Judgment).
At issue on defendants' post-trial motion for judgment as a matter of law are the following two questions:
(i) Whether Nationwide presented sufficient evidence to meet its burden of proving Fraraccio caused Elijah Nealey's death, and
(ii) Whether Nationwide still owed a duty to defend Fraraccio in the underlying state court action despite a finding that Fraraccio was not ultimately entitled to indemnification under the Policy.
Defendants' motion for judgment as a matter of law pursuant to Rule 50(b), Fed. R. Civ. P., requires a court to render judgment as a matter of law when "a party has been fully heard and there is no legally sufficient basis for a reasonable jury to find for that party on that issue." Rule 50, Fed. R. Civ. P. In reviewing a motion for judgment as a matter of law, a "court should review all of the evidence in the record" and "must draw all reasonable inferences in favor of the nonmoving party[.]" Reeves v. Sanderson Plumbing Products, Inc. , 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).
Defendants' first argument is that there was no evidence at trial establishing the cause of Elijah Nealey's death, and that as such, no reasonable jury could conclude that Elijah Nealey's death was caused by Fraraccio's intentional acts. Substantial evidence presented at trial contradicts this argument. Specifically, Fraraccio's testimony about her actions provides a sufficient basis upon which the jury could conclude that Fraraccio's intentional acts caused Elijah's death. Fraraccio testified that she pulled Elijah's chair out from under him, causing Elijah to hit his head, and that she put her hand over Elijah's nose and mouth and held him tightly while Elijah was crying. Fraraccio also testified that Elijah was active and crying while she was downstairs with him, but that Elijah was inactive and quiet when Fraraccio took Elijah upstairs for a bath. Fraraccio's testimony at trial mirrored her statements in her deposition and her answers to interrogatories. See Fraraccio Dep. at 46:9-13; Fraraccio Interrog. Ans. 5. Fraraccio was the only witness to Elijah's death, and her testimony alone provides a sufficient basis from which a reasonable jury could conclude that Elijah's death was not an accident, and that Elijah's death was caused by Fraraccio's intentional acts.
Seeking to avoid this conclusion, defendants argue that the medical examiner's report stating that Elijah's cause of death was "undetermined" precludes a jury finding that Fraraccio caused Elijah's death. The jury was presented with the death certificate and the conclusion that the cause of death was undetermined, and yet the jury still concluded based on Fraraccio's testimony that Fraraccio had caused Elijah's death. That conclusion is not unreasonable and defendants cite no case for the proposition that expert testimony is the only valid basis for determining cause of death.
Defendants also argue that Fraraccio's testimony was insufficient to support a reasonable jury finding in favor of Nationwide because Fraraccio's testimony about the cause of Elijah's death was the result of police interrogation. Although Fraraccio's initial confession was to police, Fraraccio's trial testimony was nearly identical to her confession to police and her testimony *452 at her deposition. A reasonable jury could find Fraraccio's confession credible, and could conclude that Fraraccio was telling the truth when she said that she smothered Elijah. There is no basis for concluding that her testimony was unreliable, and even if there were, determining witness credibility is the province of the jury, not the court. Reeves , 530 U.S. at 151, 120 S.Ct. 2097. Accordingly, defendants' motion for judgment as a matter of law on the ground that there was insufficient proof of cause of death fails.
Fraraccio has also filed her own post-judgment motion seeking judgment as a matter of law concerning coverage under the policy's duty to defend provisions. To be sure, as Fraraccio argues, Virginia firmly adheres to the general rule that the insurer's duty to defend is broader than the duty to indemnify. As the Supreme Court of Virginia has noted "an insurer's duty to defend ... is broader than [the] obligation to pay, and arises whenever the complaint alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy." Virginia Elec. & Power Co. v. Northbrook Prop. & Cas. Ins. Co. , 252 Va. 265, 268-69, 475 S.E.2d 264 (1996).
Although there can be no doubt that this general rule governs in Virginia, there is a recognized exception that governs "where the insured's own conduct took him outside the coverage of the policy." Stout v. Grain Dealers Mut. Ins. Co. , 307 F.2d 521, 524 (4th Cir. 1962). In Stout , the insured did not qualify for indemnification under the policy because he had intentionally shot the victim in the underlying state action. Under these circumstances, the Fourth Circuit sensibly pointed out that "the duty to defend does not exist if it is not possible for the insurer to defend the insured and at the same time to protect its own interests." Id. This exception is sensible, as the insurer's interest in minimizing its exposure to liability in a case in which it may have a duty to indemnify "manifestly disappears if, assuming the claims were to succeed, the insured would have no duty to indemnify." Town Crier, Inc. v. Hume , 721 F.Supp. 99, 102 (E.D. Va. 1989). For example, if an insured intentionally murders an individual, it would scarcely make any sense to compel the insurance company-which denies coverage-to defend a civil suit styled as a negligence action brought by the decedent's representative against the insured. Simply put, it would be illogical to require an insurer who denied coverage to defend an insured in a civil negligence action in which there is no possibility that the insurer owes indemnification to the insured.
The Supreme Court of Virginia recognized this principle in Ocean Acc. & Guarantee Corp., Ltd. v. Washington Brick & Terra Cotta Co. , 148 Va. 829, 843-44, 139 S.E. 513 (Va. 1927), which held that an insurance company had no duty to defend an insured where there was no possibility that the insurance policy's provisions required indemnification for the death of one of the insured's employees. In Washington Brick , the insured was sued for damages related to the death of a minor employed by the insured. Id. at 833, 139 S.E. 513. The minor was employed by the insured in violation of Virginia law, and so the insurance company refused to defend the insured on the ground that the insurance policy's exclusion for illegal acts by the insured barred indemnification coverage. Id. at 844, 139 S.E. 513. The Supreme Court of Virginia concluded that because the evidence presented to the jury conclusively established that the insurer did not have a duty to indemnify the insured, the insurer also had no duty to defend the insured in the underlying civil suit. Id. Thus, the decision in Washington Brick fully supports the conclusion that where, as here, there is a conclusive finding that *453 there is no duty to indemnify an insured, an insurer also has no obligation to defend the insured.
Seeking to avoid this result, Fraraccio attempts to distinguish her situation on the ground that Fraraccio did not admit that she intentionally harmed Elijah, whereas the defendants in the above cases admitted that their conduct placed them outside the coverage of the policies at issue. That argument is unavailing; nothing in the case law suggests that the duty to defend terminates only where an insured admits that he or she is not covered by the policy. Rather, the cases sensibly conclude that where an insured's actions place him or her outside the indemnification coverage of an insurance policy, an insurer is not required to defend an action based on that alleged conduct. Thus, Fraraccio's motion for judgment as a matter of law must be denied.
Accordingly, for the reasons stated above, and for good cause,
It is hereby ORDERED that defendants' motions for judgment as a matter of law are DENIED (Docs. 103, 106).
The Clerk is directed to send a copy of this Order to all counsel of record.